IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| RASHIDA KING, | : | Case No. 1:17-cv-794 |
| Plaintiff, | : | Judge Susan J. Dlott |
| v. | : | **ORDER DENYING DEFENDANTS'** |
| | : | **MOTION FOR SUMMARY** |
| CINCINNATI PUBLIC SCHOOLS, *et al.*, | : | **JUDGMENT** |
| Defendants. | : | |

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 21). Plaintiff filed a response to which Defendants replied (Docs. 25, 29). For the reasons set forth below, Defendants' Motion for Summary Judgment will be **DENIED** as to Plaintiff's claims for hostile work environment and constructive discharge. Her remaining claims will be dismissed as **WAIVED**.

## I. BACKGROUND

### A. Facts

Defendant Cincinnati Public Schools ("CPS") employed Plaintiff Rashida King as a seventh and eighth grade social studies teacher at Riverview East Academy ("Riverview") from August 2015 until July 2016. Charlene Myers is the Riverview Principal.

In March 2016, King requested a one-week medical leave. King submitted the appropriate documentation, and Myers approved the leave request. After completing the March leave, King submitted Family and Medical Leave Act ("FMLA") paperwork to Beth Willis, CPS Human Resources Compliance Supervisor, requesting leave from April 4 through May 2, 2016. Willis telephoned Myers to inform her of King's leave request. During the telephone conversation, Myers asked Willis the basis for King's FMLA request. Willis responded that

1

King's leave request related to "psychological reasons." (Myers Dep., Doc. 12 at PageID 428.) Myers did not request any more specific information about King's condition, and Willis did not disclose anything further. (*Id.*)

Later that day, Myers met with King's teaching team of five other teachers. An Assistant Principal also joined the meeting. (*Id.* at PageID 430.) During the team meeting, Myers told all present that King would be missing time for "psychological reasons." (*Id.* at PageID 431.) Myers further informed the team that for her, "personally, with my upbringing, my background, it was hard for me to understand somebody taking time off for psychological reasons." (*Id.* at PageID 434.) Myers did not review school policies or request permission from King or from the Human Resources Office before disclosing the reason for King's FMLA leave request. (*Id.* at PageID 431)

After the team meeting, one of the teachers present at the meeting, Susan Casteel, contacted King. Casteel texted King that Myers made the following statements at the team meeting: (1) "Rashida [King] isn't coming back as some of you expected due to mental health;" (2) "I'm having Mary [CPS Superintendent] check into it;" (3) "I don't have to offer her the position next year due to her exceeding the sick time;" (4) King's "grades can be changed as far as I'm concerned;" (5) "Is [King] mentally ill . . . that's debatable;" and (6) "sources within the school have said [King] posted a pic of her being out on [Facebook] and then Aimee says she defriended me." (Casteel Text Message, Doc. 10-3 at PageID 219–20.) When asked at her deposition, Myers admitted referencing the "psychological reasons" for King's leave, stating that she personally would not take leave for mental health reasons, and engaging in a general discussion of student grade changes prior to King's return, but she denied making the other statements. (Doc. 12 at PageID 436–43.)

2

King contacted her union, and she attempted to contact the school district's Director of Human Resources to complain about Myers' disclosure of her confidential medical information. (King Dep., Doc. 10 at PageID 103.) When her complaints were not addressed and the Human Resources Director failed to return her calls, she contacted an attorney. Her attorney then contacted the Cincinnati Public Schools Office of General Counsel.

### B. Procedural Posture

Plaintiff initiated this action alleging claims under 42 U.S.C. § 1983 (Equal Protection), the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2615, *et seq.*, the Rehabilitation Act, 29 U.S.C. §§ 504, *et seq.*, the Ohio Civil Rights Act, O.R.C. §§ 4112.01, *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.* Defendants have moved for summary judgment on all of Plaintiff's claims. The Court heard oral arguments on March 7, 2019.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden to show that no genuine issues of material fact are in dispute. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 811 (6th Cir. 2011). The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must "present affirmative evidence in order to defeat a properly

supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

A court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added); *see also E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 760 (6th Cir. 2015) (*en banc*). A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 132 (6th Cir. 2014) ("A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party.") (emphasis in original) (citation omitted). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

### III. ANALYSIS

Defendants move for summary judgment on all of Plaintiff's claims. Defendants contend that King suffered no tangible injury or adverse employment action and that King cannot factually support a hostile environment claim based on her disability. King responds that she has offered enough evidence to establish a hostile work environment claim based on disability; that CPS constructively discharged her; and that CPS, as a state actor, is subject to § 1983 liability for an equal protection violation because it treated King differently from her non-disabled coworkers. King agrees with Defendants that her complaint does not support a separate retaliation claim. The Court will address Plaintiff's claims individually.

**A. Hostile Work Environment**

To establish a hostile work environment claim based on disability under the ADA, "the employee must demonstrate that: (1) she was disabled; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment unreasonably interfered with her work performance; and (5) the defendant either knew or should have known about the harassment and failed to take corrective measures." *Rafferty v. Giant Eagle Markets, Inc.*, Case No. 2:17-CV-617, 2018 WL 5636169 at *8 (S.D. Ohio October 31, 2018) (quoting *Trepka v. Bd. of Educ.*, 28 F. App'x 455, 460–61 (6th Cir. 2002)).

In determining whether a plaintiff has established the existence of a hostile working environment, "the factfinder must consider all of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).[1] "The ADA is not 'a general civility code for the American workplace[.]'" *Rafferty*, 2018 WL 5636169 at *8 (quoting *Mance v. Malco Prod., Inc.*, Case No. 5:16CV1721, 2016 WL 5661619 at *2 (N.D. Ohio Sept. 30, 2016)). Rather, "[a] hostile work environment occurs when an individual's workplace is 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's working environment.'" *Waltherr-Willard v. Mariemont City Sch.*, Case No. 1:12-CV-476, 2014 WL 347027 (S.D. Ohio Jan. 30, 2014), *aff'd*, 601 F. App'x 385 (6th Cir. 2015) (quoting *Harris v. Forklift Sys.*, 510 U.S. at 21). "Plaintiff must show that the defendant's conduct was objectively severe or pervasive enough to

---

[1] The standard for determining a hostile work environment based on disability claims is the same as that used in Title VII claims for harassment based on race, color, religion, sex, or national origin. *See Coulson v. Goodyear Tire & Rubber Co.*, 31 F. App'x 851 (6th Cir. 2002).

5

create a work environment that any reasonable person would find hostile or abusive, and plaintiff must subjectively regard it as abusive." *Id.* (citing *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463–64 (6th Cir. 2000)).

In the case at bar, defendants admit that King was disabled, and there is evidence that King was subjected to unwelcome harassment based on her disability. Myers admits revealing that King was taking FMLA leave for psychological reasons, and "the other thing I said was, personally, for me personally, with my upbringing, my background, it was hard for me to understand somebody taking time off for psychological reasons." (Doc. 12 at PageID 434, 436.) Myers also acknowledges discussing whether other teachers should change King's students' grades, but she denies that it was in the context of trying to harass King. (*Id.* at PageID 439.)

The closer question here is whether the harassment was severe and pervasive enough to unreasonably interfere with King's work performance. The Court concludes that King has offered enough evidence to create a genuine issue of material fact on this issue.

Specifically, Myers admittedly announced confidential medical information to King's entire teaching team without consent and implied that King was using FMLA leave inappropriately. (Doc. 12 at PageID 434, 436, 439.) Casteel recalls Myers stating that King may not be rehired and that King may not even be suffering from mental health concerns, and she further recalls that Myers engaged the group in conversation about whether King's social media activity indicated she was not truly ill. (Casteel Text Message, Doc. 10-3 at PageID 219–20.)

After King complained about the team meeting disclosures, Myers allegedly became upset with the team for telling King, raising her voice, causing people to be "on edge," and transforming an already "hectic" workplace into one described as "intense." (Doc. 14 at PageID 507–508.) Indeed, Casteel feared disciplinary action for sharing the comments with King,

feeling "the whole team was like on edge, Terri and Charlene [Myers], in particular about who did it, who told Rashida [King]." (*Id.* at PageID 511.) She believed Myers and others were being "crazy," "dramatic," "manipulative," and engaging in "scare tactics." (*Id.* at PageID 511–12.) Casteel perceived Myers as "scary" and "emotional" about the situation, finding it "a lot to weigh on my shoulders." (*Id.* at PageID 513–14.)

Defendants correctly note that these events occurred while King was on FMLA leave and not present in the building. However, King clearly knew about them and believed conditions were not conducive to her return. Considering the evidence in the light most favorable to King, there is a genuine issue of material fact concerning whether the harassment was sufficiently severe and pervasive so as to interfere with King's work.

Finally, there is evidence that CPS knew about the harassment and failed to take corrective measures. Upon learning of Myers' remarks at the team meeting, King contacted her union, and she attempted to contact the CPS Director of Human Resources, Paul McDole, directly. (King Dep., Doc. 10 at PageID 103.) While the union contacted CPS on her behalf, McDole did not return her call. (*Id.*) McDole acknowledges that the union representative contacted him regarding King's complaint. (McDole Dep., Doc. 15 at PageID 528.) He discussed King's situation with the union representative at their weekly meeting, but he did not question Myers prior to the meeting. (*Id.*) After the meeting, McDole spoke with Myers via telephone regarding whether King would be returning, but he does not recall whether he asked Myers about the remarks she made. (*Id.* at PageID 528, 531.) It was only after King retained an attorney who then contacted CPS' attorney that CPS initiated an investigation. (Hoying Dep., Doc. 16 at PageID 569–572.) Accordingly, with material questions of fact remaining,

7

Defendants' Motion for Summary Judgment will be denied as to King's hostile work environment claim.

**B. Constructive Discharge**

"To demonstrate constructive discharge, a plaintiff must adduce evidence to show that (1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person, (2) the employer did so with the intention of forcing the employee to quit, and (3) the employee actually quit." *Russell v. CSK Auto Corp.*, 739 F. App'x 785, 794 (6th Cir. 2018) (quoting *Savage v. Gee*, 665 F.3d 732, 739 (6th Cir. 2012)).

As to the first prong of this standard, the determination of whether a reasonable person would feel compelled to resign "depends on the facts of each case, but we consider the following factors relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status." *Id.* at 794–95 (quoting *Logan v. Denny's, Inc.*, 259 F.3d 558, 569 (6th Cir. 2001)).

With regard to the second prong of the constructive discharge standard, "The employee alleging constructive discharge need not prove that his or her employer undertook actions with the subjective intention of forcing the employee to quit. Rather, the . . . intent requirement can be satisfied so long as the employee's resignation was a reasonably foreseeable consequence of the employer's actions." *Smith v. LHC Grp., Inc.*, 727 F. App'x 100, 106 (6th Cir. 2018). However, the "employee must show that her working conditions were objectively intolerable" as the constructive discharge "doctrine does not protect employees who leave their job 'in apprehension

that conditions may deteriorate later.'" *Groening v. Glen Lake Cmty. Sch.*, 884 F.3d 626, 630 (6th Cir. 2018) (quoting *Agnew v. BASF Corp.*, 286 F.3d 307, 310 (6th Cir. 2002)). Generally, "employees are expected to stay on the job if they can pursue other forms of relief." *Id.*

As the Sixth Circuit has previously concluded:

> [A]n employer's criticism of an employee does not amount to constructive discharge—especially when the employer's criticism is limited to a few isolated incidents. . . . *See, e.g.*, *Savage v. Gee*, 665 F.3d 732, 739 (6th Cir. 2012); *Smith v. Henderson*, 376 F.3d 529, 534 (6th Cir. 2004) (calling an employee "incompetent" and a "whiner" in front of other employees is normally insufficient to establish constructive discharge); *see also Cleveland v. S. Disposal Waste Connections*, 491 Fed. Appx. 698, 708 (6th Cir. 2012) (disparaging comments isolated to only a few incidents and by a few individuals do not alter working conditions). And the fact that the [defendant]'s criticism was directed at [plaintiff]'s use of FMLA leave does not somehow flip a switch, suddenly making her working conditions intolerable. *See Weigold v. ABC Appliance Co.*, 105 Fed.Appx. 702, 708–09 (6th Cir. 2004).

*Groening*, 884 F.3d at 631.

As to deliberately creating intolerable working conditions, King's supervisor gathered King's entire teaching team (who were already stressed and overworked), disclosed to them confidential medical information that King had taken leave for psychological reasons, stated that "it was hard for me to understand somebody taking time off for psychological reasons," questioned whether King was actually mentally ill, informed the assembled group that she did not have to bring King back the following year because she had exceeded appropriate leave time, and implied—based on social media activity—that King was malingering. (Doc. 12 at PageID 434, 483; Doc. 10-3 at PageID 219–220.) While this is not the typical case of ongoing, prolonged harassment, the Court concludes that these actions create a genuine issue of material fact concerning whether a reasonable person would feel compelled to resign. The statements went beyond mere insults, disclosed confidential information, and were made to King's entire

9

teaching team while King was not there to defend herself. Furthermore, once King reported Myers' statements to the team, Myers allegedly used fear and intimidation to unearth the culprit responsible for disclosing her conduct, thereby exacerbating the problem.

As to the employer's intention, a reasonable juror could conclude that King's resignation was a reasonably foreseeable consequence of Myers' alleged actions. Defendants contend that they did not intend to force King to resign, and, in fact, Myers thought King was an excellent teacher and wanted her to return to Riverview. However, viewing the facts in the light most favorable to King, Myers did not express this viewpoint until after King contacted both the Human Resources Director and her union to report Myers' behavior.[2] Accordingly, Defendants' Motion for Summary Judgment will be denied as to King's constructive discharge claim.

**C. Remaining Claims**

King acknowledges that her Complaint does not allege a retaliation claim. (Doc. 25 at PageID 724.) As to her 42 U.S.C. § 1983 claim for violation of her right to Equal Protection, King offers the single sentence that she "was undoubtedly treated differently from her non-disabled coworkers, so § 1983 is applicable under the same analysis as discussed above." (*Id.*) However, she makes no attempt to offer evidence of Defendants' treatment of non-disabled coworkers or how an Equal Protection analysis would apply in this case. In her memorandum in opposition to summary judgment, King actively defends only her hostile work environment and constructive discharge claims. Thus, the Court concludes that King has waived her remaining claims. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in

---

[2] Defendants also contend that King did not suffer a constructive discharge because they later offered her a similar position at another CPS school. However, as explained in the Court's Order Denying Defendants' Motion in Limine, any evidence that Defendants offered King a similar position at Aiken High School is inadmissible pursuant to Federal Rule of Evidence 408.

a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). Accordingly, King's remaining claims will be dismissed as waived.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 21) is hereby **DENIED** as to Plaintiff's hostile work environment and constructive discharge claims. Plaintiff's remaining claims are dismissed as **WAIVED**.

**IT IS SO ORDERED**.

Dated: March 13, 2019         S/Susan J. Dlott_____
                              Judge Susan J. Dlott
                              United States District Court